■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN GREEN, Appellant. — Appeal by defendant from a judgment of the County Court, Nassau County (Harrington, J.), rendered June 18, 1982, convicting him of grand larceny in the third degree, upon a jury verdict, and imposing sentence.

Judgment reversed, on the law, and new trial ordered. Questions of fact have not been considered.

Defendant was convicted, after a jury trial, of grand larceny in the third degree. The underlying incident occurred on March 24, 1981 at approximately 11:30 A.M. The complainant was walking along Maple Avenue when she became aware of some people walking behind her. She turned around and noticed four black youths of approximately equal height. Defendant was among them. She continued walking. Shortly thereafter, one of the youths suddenly approached her from behind and grabbed her pocketbook from her right hand. The youths all fled in separate directions. The incident happened very quickly and the complaint testified that she only saw the perpetrator for "[a] second". The police were called and the complainant gave them a description of the youth who had stolen her pocketbook, which was then broadcast by the police as a radio bulletin. The description was that of a male black, five foot, seven inches in height, wearing a black sweater, black sneakers, a maroon cap, dark jacket and brown pants. The complainant and the two police

officers thereafter cruised the area in the patrol car, looking for the suspect. When they reached a housing project, they spotted defendant, a black youth, running through a parking lot. One of the officers pointed to defendant and asked the complainant if he was the one who stole her bag. The complainant replied, "It is". Defendant stopped running when he saw the police car. The officers approached, patted him down, and recovered the contents of the complainant's pocketbook, although the actual pocketbook itself was never found.

The defense produced two witnesses at trial, both of whom claimed that they were among the four youths who were present at the time. Each stated that the defendant was not the person who took the pocketbook but rather that the thief was one Anthony Gray. This version of the events was consistent with that contained in a statement made by defendant following his arrest. In addition to indicating that it was Gray who stole the pocketbook, defendant claimed that the act was done without his prior knowledge. According to defendant's statement, while everyone ran away after the incident, he subsequently encountered Gray by chance in a parking lot of the housing project. Gray then asked him to hold the contents of the pocketbook, but upon being alerted to the approaching police car, Gray fled and left defendant to be caught with the proceeds of the crime.

Thus the identification of defendant was a key issue in the case. Following complainant's testimony as to her identification of defendant from the police car, however, the arresting officers were permitted, over objection, to testify to the particulars of complainant's description of defendant and as to complainant's on-the-scene identification of defendant. In effect, they testified to the same facts to which complainant had already testified. It was error for the court to have admitted that portion of their testimony since it clearly had the effect of bolstering the complainant's identification of the defendant (*People v Trowbridge,* 305 NY 471; *People v Ward,* 95 AD2d 351), and improperly suggesting "an impressive amount of testimony to identification when such [was] really not the fact" (*People v Caserta,* 19 NY2d 18, 21).

As noted, the complainant was the sole witness to identify defendant and two defense witnesses presented contrary identification evidence. Further, the complainant had never seen defendant prior to the incident and her opportunity to clearly view him during it was questionable, since she failed to identify a large scar on defendant's face. Moreover, she did not spontaneously identify defendant. On the contrary, her identification was initially suggested to the complainant by the officer when he

pointed to defendant and asked if he was the perpetrator (cf. *Matter of Danny R.,* 50 NY2d 1026; *People v Caviness,* 38 NY2d 227). Together, these factors affected the strength of the identification testimony. Thus, we conclude that the evidence of identity neither was so overwhelming, nor so " 'clear and strong' " that it can be said that the *Trowbridge* error was rendered harmless (*People v Mobley,* 56 NY2d 584, 585; *People v Ross,* 79 AD2d 666, 667; *People v Napoletano,* 58 AD2d 83, 91). Accordingly, defendant's conviction must be reversed and a new trial ordered.

In light of our determination, it is unnecessary to reach defendant's remaining contention. Titone, J. P., Mangano, Gibbons and Brown, JJ., concur.